## John Harms

### v.

## Mary Harms.

1. . Evidence insufficient.—The court is of opinion that the evidence in this case is too weak and uncertain to sustain the verdict.

2. Evidence—Competency.—In an action by an heir to recover money agreed to be paid her in consideration that her mother would assign her widow's interest in the land of her deceased husband, when the evidence is conflicting, testimony that the land was worth no more than the sum paid to the widow, is competent as bearing upon the question of the probability of the defendant's making such a contract.

Appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding. Opinion filed March 22, 1882.

Mr. B. F. Felch, for appellant; that the written contract can not be varied by parol testimony, cited Smith v. Price 39 Ill. 28; O'Reer v. Strong, 13 Ill.  688; Abrams v. Pomeroy, 13 Ill. 133; Marshall v. Gridley, 46 Ill. 247; Hartford Ins. Co. v. Webster, 69 Ill. 392; Mager v. Hutchinson, 2 Gilm. 266; Snyder v. Griswold, 37 Ill. 216; Wood v. Price, 46 Ill. 439; Lighthall v. Colwell, 56 Ill. 108; Lane v. Sharpe, 3 Scam. 566; Scott v. Bennett, 3 Gilm. 243; Winnesheik Ins. Co. v. Holzgrafe, 53 Ill. 516; Marshall v. Gridley, 46 Ill. 247.

Mr. S. C. Eastman, for appellee; that where a paper contained only a part of an agreement, parol evidence is competent to show other portions of the agreement, cited Guest v. Washburn, 9 Pick. 338; Hall v. Maecubin, 6 Gill J. 107; Relsey v. Dickinson, 2 Blackf. 236; Booth v. Hynes, 54 Ill. 363; Huebsch v. Scheel, 81 Ill. 281.

Wilson, P. J.    We think this case should be submitted to another jury.  The declaration alleges that appellant, in 1875, orally agreed with Amelia Harms, his stepmother, to pay her $300, and a like sum to each of his brothers and his sister,

Mary Harms, appellee, on demand, for the interest of Amelia Harms in the estate of her husband, Frederick Harms, deceased, father of John and Mary Harms and two other brothers; that he paid to Amelia Harms, her $300, but refuses to pay appellee, though requested.

The evidence introduced on the part of appellee to prove the contract as alleged, was exceedingly meager. It consisted of the testimony of Amelia and Ernst Harms, the stepmother and brother of appellant. It was given nearly six years after the transaction, and stated the contract only in the most general terms, giving the conclusions of the witness, rather than specific facts. They do not attempt to state what the parties said, nor the substance of the language used by them at the time of making the alleged contract; no time is stated in which the money was to be paid to the children and nothing is said as to what, if any, evidence of indebtedness they were to receive from appellant. When the parties went to an attorney a day or two afterward to have a quit-claim and release of Mrs. Harms' interest drawn up and executed, no mention was made of any agreement by appellant to pay the children anything, and the papers prepared by the attorney, express no other consideration for the sale of her interest than the $300 to be paid to her.

Opposed to the plaintiff's evidence is the testimony of John Harms, who gives the terms of the contract more in detail. He testifies that he never agreed to pay the children anything for his stepmother's interest in the estate; that he bought her interest July 29, 1875 for $300, giving his notes therefor, one for $50 due in one month, and one for $250 due in one year, which he paid at maturity.

That in the fall of 1880 he offered to buy his sister's interest in the property, for which she testifies he offered her $50.

Appellant further testifies that the value of the entire property belonging to the estate did not exceed $600, and that the estate was indebted to the amount of $200. As this was the only testimony on that subject, and was uncontradicted, the court properly overruled the plaintiff's objection to its competency, presumably on the ground that as the evidence in re-

Fame Ins. Co. v. Thomas.

lation to the making of the contract was conflicting, the value of the property might properly be considered as bearing upon the question of the probability of the defendant's making such a contract. As appellant bought only the interest to which his stepmother was entitled, this being all she could sell, it was legitimate ground for arguing that he would not be likely to contract to pay $1,200 for her interest in an estate worth only $600, with outstanding debts of $200. Moreover, as the widow could by no act of hers divest the heirs of their rights in her husband's estate, appellant's purchase of Amelia Harms' interest constitutes no bar to any proceedings at the suit of any of his co-heirs, to enforce any rights, legal or equitable, to which they, or either of them may be entitled irrespective of appellant's purchase. Whether a widow, by a sale and assignment of her widow's award to one of several heirs of her deceased husband, will have the effect to invest such assignee, as against his co-heirs, with the right to her award, it is unnecessary to now decide.

We are of opinion that the evidence taken all together is too weak and uncertain to justify an affirmance of the judgment without great danger of its working serious unjustice to appellant. The judgment is therefore reversed, and the cause remanded to the court below for a new trial.

Reversed and remanded.